Haynes, J.
(orally).
Preliminary to this decision I may be permitted to say That owing to the present condition of my eyesight, I am unable to read authorities, and must deal with the questions in a general way.
In the case of the Board of County Commissioners of Wood County, Ohio, and T. B. Townsend v. Robert Pargillis, which comes to this court on error, a petition in.errror -is filed to reverse the judgment of the court of common pleas wherein an injunction was granted Robert Pargillis, plaintiff below, enjoining the Board of County Commissioners from • entering into a certain contract with a party for the heating of the new court house. ’
The case was heard in the court of common pleas upon a ■ demurrer to the petition, and after overruling the demurrer, •the defendant below not desiring to plead further, judgment • was rendered on that petition for the, plaintiff.
The case presents some difficult and important questions. We have given the arguments of counsel very careful con- \ sideration, and have made a careful examination of the statutes bearing upon these questions, and have arrived at cer *378 tain conclusions. The conclusions to which the several judges-have arrived at are not the same upon all questions. Upon some of the questions we are a unit, and on other questions the decision will be a decision of a majority of the court.
The first question is the right of the plaintiff, Robert Pargillis, to bring the suit. The suit is brought by the plaintiff for himself and other tax-payers of Wood county, who, he avers, are so numerous that it is impracticable to bring them all into court, and for that reason he claims the right to prosecute this action under section 5008, Revised Statutes.
The position is taken, however, that a suit of this kind can not be maintained under that section of the statutes; that the only suit provided for or allowed under the statutes of' Ohio is a suit under section 1277, by the prosecuting attorney of the county, and if he fails to perform his duty in that respect, that any tax-payer may, under section 1278, make application tó and demand that he proceed to bring suit, and upon his refusal to do so, then the tax-payer himself may proceed in the name 'of the state upon certain terms and conditions. It is argued that this method of proceeding is an exclusive method, and inasmuch as there is no averment in the petition that the prosecuting attorney has ever been called upon, or refused to proceed to bring this action, that therefore the action cannot be maintanied by the present plaintiff. This question is one that is not free from doubt and uncertainty. The general intention, I presume, of the legislature was, that an action of this nature should be brought and prosecuted by the prosecuting attorney for the county, and upon his refusal to do so, that a taxpayer might then come under the' statute and prosecute the suit in the-name of the state of Ohio. That, however, does not decide the question as to whether the taxpayer has not the right under the common law to come into court and invoke the protection of the court in a case of this kind.
*379 This action is brought by the plaintiff, Robert Pargillis, a' resident, property owner and taxpayer of Wood county, to restrain the county commissioners from entering into a certain contract with one T. B. Townsend for the furnishing of a heating apparatus for the heating of the new court house, and it is alleged in general terms that the contract for. heating about to be entered into is more expensive than certain other systems of heating that might be had, and that if the ■county commissioners are allowed to proceed, it will impose larger burdens upon the taxpayers than if the contract had been submitted to the competition of public bidding, and a saving of several thousand dollars would have been made to plaintiff and the other taxpayers of the county if there had been competition.
The petition reads, “The plaintiff, Robert Pargillis, says he is and has been for many years last past a resident and property owner, and taxpayer in Wood county, Ohio.”
That the subject of this action is of common and general interest to all of the taxpayers of said county of Wood, who are so numerous that it is impracticable to bring them all before the court, and for that reason plaintiff prosecutes,this action for the benefit of all as well as for the benefit of himself.
He further says that the defendant, the Board of County Commissioners, is and was at the time of the grievances hereinafter complained of composed of the following persons, to-wit:
Samuel Knight, James Gibson, and Christopher Gundy.
That the defendant, T. B. Townsend, is the contractor engaged by said Board of County Commissioners to build the Wood county court house, now in process of construction by the said Townsend, under contract with the said defendant, the said Board of County Commissioners.
That by the special act of the General Assembly of the .State of Ohio,passed Feburary 2,1893,said Board of County *380 Commissioners was authorized to erect a new court house in-said county, and which said court house is in process of construction, but the construction thereof will not be completed under one year from this date, and probably not within a: longer period.
That by the terms of the said special act of the general assembly, the judges of the circuit court of_ said county were' required to, and did upon the passage thereof, appoint fourcompetent freeholders of said county, to-wit: Earl Merry, Edward B. Beverstock,Frank A. Baldwin and John A. Ault, which building committee was required to act and vote with said board of county commissioners, in procuring, making ■ and approving plans, estimates and specifications for said court house, in awarding contracts for labor and materials used in building the same, and for furnishing said court house when completed, and determining all questions connected therewith until said court house should be completed and furnished according to contracts made and accepted by a majority of said commissioners and of said committee.
That by the terms of said special act, said commissioners-, and committee were and are authorized to advertise for proposals, either for the entire work of erecting said courthouse,' or for furnishing the same at a single job, or to advertise-for proposals for separate portions thereof, and let contracts to the lowest responsible bidder, and to receive and accept bids therefor.
That all cost and- expense of erecting and furnishing said court house is to be paid for by taxation upon the property of plaintiff and other taxpayers of said county.
That the said defendant,the board of county commissioners, in disregard and disobedience of the provisions of said ■special act, have refused to recognize or co-operate with said building committee in or' about any of the matters or things'done by said commissioners and said committee in erecting" or furnishing said court house, but have unlawfully let and *381 entered into contracts for the construction and in furnishing in part, of said court house upon their own motion and responsibilty, and without permitting and having refused to1 permit said committee to act in relation thereto. That on the 26th day of April, 1894, said board of commissioners, without consulting or co-operating with said committee, as aforesaid, but refusing to consult, act or co-operate with said commitee,made and entered into a contract with'said defendant, T. B. Townsend, in which the said Townsend was awarded the job of providing for the heating of said court house, for the sum of nine thousand four hundred dollars, which award was made to the said Townsend without any proposals for bids being submitted to other reputable persons and firms who stood ready and desirous to offer said commissioners terms and propositions leading to a contract, for said heating of said court house, at a much less price than said board of commissioners, by virtue of said contract with said Townsend, agreed to pay therefor.
That the said board of county commissioners -did at no time before the making of said contract with said Townsend, advertise for bids, for the purpose of letting said job for heating said court house, with a view of submitting said contract as required by the specifications to the lowest bidder; but awarded it to said defendant Townsend at a greatly exorbitant sum, to-wit: the sum of nine thousand four hundred dollars, as hereinbefore mentioned, to the prejudice of this plaintiff and all other taxpayers of the county.
Plaintiff is informed and believes, and therefore charges that if said contract had been submitted to the competition of public bidding by the various firms that desired to furnish said heating according to the plans and specifications, a saving of several thousand dollars would thereby have been made to plaintiff and the other taxpayers of this county.
Plaintiff further avers that said contract was made by said board of county commissioners without permitting said build *382 ing committee to participate in any of their deliberations or acts in reference thereto, and wrongfully awarded said contract to the said Townsend without their knowledge or consent and in violation of their duty which the special act of the Legislature of the State of Ohio in reference to the building of said court house imposed upon them.
That it was the duty of the said board of county commissioners to have awarded the contract for the heating, if they awarded it at all, to the lowest responsible bidder therefor, considering the several elements of price, material, design, and workmanhsip.
That divers persons and firms were at the time said contract was let, able and willing to enter into a valid and binding contract with said board of county commissioners to furnish said heating at a price much lower than that awarded the said Townsend, and of material, workmanship and quality equal, and were ready to give a good and sufficient bond for the faithful performance of said contract if the same should have been awarded to said parties.
That said parties are now ready and willing to make bids for the said heating of said court house if they are permitted to do so.
The said board of county commissioners, in failing to submit said contract to public bidding, and awarding the same to the said defendant Townsend, have been guilty of gross want of or abuse of the discretion required of them in the discharge of their duties as members'of the said board of county commissioners, and which want or abuse of such discretion will,unless the relief hereinafter prayed for be granted, result in great and irreparable damage to the plaintiff and other taxpayers in said county, for which they have no adequate remedy at law.
That the said contract so as aforesaid pretended to be entered into with the said T. B.Townsend was and is unlawful and void,in this:
*383 1st. That said proposal and contract with said Townsend was made without the bid or proposal of the lowest responsible bidder for heating said court house, taking into consideration the price, design, workmanship, material and designs of the several parties who desired to obtain said contract.
2nd. That said contract does not contain,nor is there filed in the office of the said board of county commissioners, any plan or specifications describing or specifying the style of said heating apparatus.
3rd. That said pretended contract was made and entered into with the said Townsend by the said board of county commissioners without permitting said building committee to take any part whatever in awarding or making thereof, or in determining the price to be paid, or the design according to which, or the material of which said heating apparatus is to be constructed, or the character of the workmanship to be expended thereon.
4th. For other reasons, appearing on the face of said contract and proceedings of said board of county commissioners, by and in relation thereto.
Plaintiff further says that unless the relief herein prayed for be granted, the defendant T. B. Townsend will unlawfully proceed to furnish said heating apparatus to said board of county commissioners, by placing the same in the court house now in the process of construction, as hereinbefore mentioned, and said board will proceed to pay therefor out of the funds of the county, the said price agreed upon by said pretended contract, whereby the plaintiff and all other taxpayers of said county will sustain great and irreparable injury.
Plaintiff therefore prays that the defendant T. B. Townsend be enjoined from furnishing said heating apparatus upon said pretended contract herein averred, and that the board of county commissioners be enjoined from receiving *384 or paying for the same under said contract; that said contract be held and declared null and void; that said board of county commissioners be enjoined from making or entering' into any further contract respecting the heating or completing of said court house without the assent or permission of the said building committee,or without first permitting them, to participate in the matter of making and entering into such contracts, and for all proper relief.
Speaking for myself I had been taught or rather brought up to the opinion that an action of this kind could not be-maintained by a taxpayer, unless he appeared in court in the-manner pointed out by the statute — sec. 1278; nevertheless, I am unable to point to any decision in Ohio, nor can I recollect any decision where any court in this state has so decided. Authorities have been produced of other states, and in some of those states such a doctrine has been maintained, and it has been maintained that where a contract is entered into by public officers, and there is supposed to be a violation of the powers or duties or obligations by the officers, that then the authority for interfering is vested in the sovereign power of the state, and it must be invoked by some officer who represents that power.
Decisions may be found, however, that a taxpayer may come into court and invoke the power of the court upon behalf of himself and .other taxpayers, whose rights are threatened to be affected by officers who are supposed to act.
We have discussed the question at considerable length, and we think the question in the present state of affairs is not very important, because if the petition is dismissed on this ground, all that will be necessary to be done is, to make application to the prosecuting attorney, and if he declines to proceed, then the taxpayer will have full power to proceed. So that in one form or another; the question to be decided can quickly be brought before the court, and we have therefore^concluded that we will not sustain any objection to the- *385 right of the plaintiff to sue, and let the case proceed at the present time with the assumption that the plaintiff had the right to bring this action on behalf of himself and his co-taxpayers.
A more weighty question follows that one: The petition goes on to say that ‘ ‘the county commissioners, proceeding in their efforts to erect a new court house, have decided to let to a certain party, one T. B. Townsend, the contract for heating the building- when completed, and the petition sets forth that on the 26th day of April, 1894, said board of county commissioners, without consulting or co-operating with said committee as aforesaid, but refusing to consult, act or co-operate with said committee, made and entered into a contract with the said defendant, T. B. Townsend, in which the said Townsend was awarded the job of providing for the heating of said court house, for the sum of nine thousand four hundred dollars, which award was made to the said Townsend without any proposal for bids being submitted to other reputable persons and firms who stood ready and desirous to offer said commissioners terms and propositions leading to a contract for said heating of said court house at a much less price than said board of county commissioners by virtue of said contract with said Townsend agreed to pay therefor. That the said board of county commissioners did at no time, before making said contract with said Townsend, advertise for bids, for the purpose of letting said job for heating said court house with a view of submitting said contract, as required by the specifications, to the lowest bidder; but awarded it to the said Townsend at a greatly exorbitant sum,to-wit: the sum of nine thousand four hundred dollars as hereinbefore mentioned, to the prejudice of this plaintiff and all other taxpayers in said county.
“Plaintiff is informed and believes,and therefore charges, that if said contract had been submitted to the competition of public bidding by the various firms that desired to furnish said heating, according to the plans and specifications, a saving of several thousand dollars would thereby have been made to plaintiff and other taxpayers of this county.’ ’
During the argument, the question was propounded to counsel more than once by the court whether there was any *386 charge of fraud on the part of the county commissioners making the contract, and the reply was, there is not, and it is true that there is no charge of fraud made, or that the board of county commissioners acted corruptly or fraudulently in the performance of its duty.
It is said there were no plans or bids made or competition allowed in procuring this heating apparatus, and that other parties stood ready and were desirous of furnishing just as good a heating apparatus as Mr. Townsend, and at a much less price. Now, it will be observed that the petition nowhere alleges that other parties stand ready to bid or to offer to bid for the use of the same kind of heating apparatus, and put'in the same system of heating that is proposed by Mr. Townsend, and which has been accepted by the county commissioners, and we take it from the averments in the petition and the knowledge we have of public affairs generally, that the averment simply amounts to this: that he, Townsend, has a system of heating that is, perhaps, patented and exclusively his own, and cannot be used by any parties without his consent, and there are other parties who have systems of heating which they say are equal in merit to that of Townsend; that the material they will furnish, and their system of heating is equally as good as Mr. Townsend’s; that is to say, in our judgment there is a contest here between the parties who have different systems of heating, each claiming that his system is as good as that adopted by the county commissioners, and claiming that the county commissioners should have taken his system, because he would have put it in at a less price than Townsend had offered to do it for; and that is about the sum and substance of the averments so far as they appear in the petition.
Well, now, it should be remembered that in the distribution of powers under the constitution of the state of Ohio, that certain political and civil powers are vested in certain public bodies; they commence with road district supervis *387 ors, township trustees, county commissioners, and in municipal corporations certain officers, and to them is committed by the constitution and the laws of the state the authority, duty and power of carrying out certain governmental functions like the maintenance of roads, erection of public buildings and various other matters and things that are familiar to us all, and which are necessary for the convenience, well-fare and prosperity of the people of the state.
Those powers are vested in those bodies, and they are not vested in other bodies; that is to say: we have an executive authority vested in the governor, legislative authority vested in the general assembly, judicial authority vested in the judges of our courts; these are specific and distinct. The powers granted to the county commissioners are not granted to the various courts of the state; nor the powers granted to the courts granted to the county commissioners.
Courts are to exercise certain judicial powers, and generally speaking they are well known and understood ;and county commissioners have certain powers, and those powers are vested in no other body. The courts cannot reach or control them in the exercise of the power conferred upon them, as I understand the law, unless by some act the commissioners have brought themselves within the judicial cognizance of the courts, as for instance in matters of fraud.
The courts have a right under the statute where officials are proceeding to make an illegal contract, to interfere and enjoin. Possibly they have the right to some extent to interfere where there is a gross abuse of power; but we fail to see any allegation in the petition that brings the commissioners within either the equity or statutory jurisdiction of the court in that regard.
The commissioners have acted apparently in good faith within the discretion conferred upon them by the statutes.
Were we to interfere here, it would simply be opposing our opinion and discretion against the discretion and opin *388 ion of the commissioners, and not by the exercise of any jurisdiction conferred upon the court.
It is said here that the county commissioners are acting illegally in this matter,in that they are proceeding to award the contract without advertising for bids, without calling for competition, and without making certain specifications,plans •and drawings. •
We have examined|the sections of the statute 794 and 795, and the others to which we^have been referred, and are unable to come to the conclusion that those statutes apply to this contract or this work, and we cannot therefore, as at present informed, interfere with the action of the county ■commissioners in this regard.
There lies beyond the above another and very grave question, and one upon which we have not been able to arrive at the same conclusion; and that is, whether the county commissioners could alone enter into a contract with this party for this work, or whether there should not have not been the intervention of the building committee as provided by the special act under which the county commissioners are authorized to proceed in the erection of this new court house. It is averred in the petition and admitted by the demurrers that the committee was appointed by the body authorized to make the appointment;.that the building committee accepted the appointment, and offered to meet and act with the county ■commissioners, and that the county commissioners refused to recognize them in regard to the letting or making of the -contracts which were to be made for the building and furnishing of the new court house.
This question is a question of some difficulty; it is an important and weighty question. The one thing that this court has to do, is to examine the statute and see what its terms are, and to declare whether its provisions are within the legislative power of the general assembly. Second: Whether they in any manner contravene any of the provisions of the’constitution of the state of Ohio.
*389 With the policy of the law or the wisdom of the legislature in passing the law, this court has nothing to do, but it should be noted in the commencement that the right of the general assembly to pass local or special acts authorizing the building of a new court house in particular counties in this state has been established by the Supreme Court.
Speaking for myself, if there was any question as to the constitutionality of a statute of this kind, I should have predicated its unconstitutionality, first, upon the clause of the constitution that all laws of a general nature should have a uniform operation throughout the state, and that the law must.be a general, and not a local one.
We must stand first, upon the proposition that the legislature had the right to pass the special act to build the court house, and to authorize the issuing of bonds to raise the necessary funds for paying for the same.
Now, it is said this law is not binding upon the county commissioners, because many of its provisions are different from those that are found in the general statute providing for the erecting of court houses. It is true that this statute is different in some respects from the general statute. The general statute provides that no board of county commissioners shall proceed to erect any court'house that shall cost more than $10,000.00 unless the question has first been submitted to the people, and has been approved by a majority of the voters; but the very first thing we find in this special statute is, that the county commissioners are authorized to build a court house to cost not to exceed two hundred thous- .and dollars without submitting the question to a vote of the people of the county. Then in the seventh section of the act it is provided that “said commissioners and committee may in their discretion advertise for proposals for the entire work as á single job, or separate portions thereof, to the lowest responsible bidder, and receive and accept bids therefor.” Now, the general statute provides that there shall be plans *390 and specifications drawn, and bids shall be advertised for separate portions of the work, and that contractors shall be permitted to bid for those separate departments without bidding for the same as a whole, and provides the method and manner by which the county commissioners are to ascertain the results and finally adopt that which shall be the lowest bid, for the whole.
Now, the county commissioners are allowed to depart from the general statute, and we see no reason why it was not competent for the legislature to authorize the countjr commissioners to depart from the general statute in regard to these details as fully as it might authorize them to depart from the statute that required the question of building 'shall be submitted to a vote of the people before a court house shall be built; so that upon the point made by the defendant below, that there has been a departure from the general statute, a majority of the court see no legal objection.
I come now to what is the final and important question in the case, and that is, the provision of the special act relating to the appointment of the “building committee,” to use the words of the statute.
The second section of the act provides:
“To carry out the provisions of this act, said commissioners are hereby authorized, by taxation upon the property in said county subject to taxation, to raise the amount necessary for the purpose, not exceeding the sum above named. And in anticipation of the collection of such taxes said commissioners shall have power to issue the' bonds of said county with interest coupons attached thereto, interest payable semi-annually in sums of not less than five hundred dollars, principal and interest payable at the office of the treasurer of said county, or at such other place as may be designated in the bonds; said bonds to be due and payable at such times as such commissioners may in their discretion deem for the best interest of the said county; provided that none of said bonds shall be due and payable at a longer period than twenty years from their date; and provided futher, that the aggregate of the principal of said bonds shall not exceed the *391 sum of two hundred thousand dollars; said bonds to bear a rate of interest not exceeding six per centum per annum, and to be sold for not less than their par value.”
Now, that refers to the county commissioners, and what they have the power to do; and no one else has the right to interfere with them.
Section 8 provides that certain bonds shall be issued: Said bonds shall be issued and signed by said commisisoners, and countersigned by the county auditor, who shall keep and preserve a record of the bonds so issued, and said bonds shall be numbered consecutively and made negotiable.”
Section 4 provides: “Said commissioners shall annually hereafter, at their June session, levy such an amount of taxes upon the tax duplicate of the county as shall be necessary to pay the accruing interest upon said bonds, and such part of the principal thereof as falls due each year until said indebtedness is fully discharged. Said commissioners are hereby authorized and impowered to purchase any of said bonds at an earlier period than their maturity,provided a surplus fund may be on hand applicable to that purpose.”
Now, we have,first the authority, and secondly, the means.
Then section 5 points out the way: ‘ Upon the passage of this act there shall be appointed by the judges of the circuit court of said county, four competent freeholders thereof, not more than two of whom shall be members of the same political party, to be known as the ‘building committee,’who shall hold their office for two years, or until said court house is completed, unless the court shall sooner remove them. They are hereby authorized to act and vote with said commissioners in procuring, making and approving plans, estimates and specifications for said court house; in awarding contracts for labor and materials used in building the same, and for furnishing said court house when completed, and in determining all questions in connection therewith, until it shall be completed, and furnished according to contracts, and accepted by a majority of said commissioners and said committee; and said judges are authorized to fill any vacancy arising in said committee from any cause, should they deem it necessary and advisable so to do.”
Now, it is urged in argument that this section of the act *392 is miconstitutional; that it contravenes the first and second sections of article 10 -of the constitution of 1851, in that the. members of this committee are county officers, spoken of as public officers, and they must be elected by a majority of the votes of the county.
Section 1, of article 10, provides: “The general assembly shall provide by law,for the election of such county and township officers as may be necessary.”
Section 4, of article 10, provides that “Township officers shall be elected by the electors of each township, at such-time, in such manner, and such term not exceeding three j'ears, as may be provided by law;” and then there is a provision that officers shall hold their offices until their successors are elected and qualified.
Th'e only case that I think we have been referred "to in regard to the question of officers, and a definition of the word “officers,” is that of The State ex rel.v.Brennan,in the 49th Ohio St., commencing at page 33. In that case there is a discussion, and perhaps a definition of what is meant by the word ‘' officer, ’ ’ as used in that article of the constitution; and without going through that decision or reading and discussing it, it is, perhaps, sufficient for me to say that in the opinion of a majority of the court, this “building committee” do not possess the qualifications, nor have they the character of public officers; that they are in fact what they are denominated, a committee, or commission, for the purpose of acting with the county commissioners, and of voting with them upon certain questions in relation to the building of the court house. While they exercise powers that are exercised by public officers, they do not have that continuity of office which it seems to us is necessary to constitute and make them public officers.
They are appointed for a definite purpose, and when that purpose is carried out, and that duty performed, their rights and duties terminate.
If one of them dies there is no compulsion on the part of *393 any one to appoint another; the circuit court can appoint another, but they may decline to do so.
They are not a body which is required to continue in office with succession; to hold their offices until their successors are elected and qualified, or to continue on from time to time for the purpose of carrying out the general governmental duties of the county, and a majority of the court think they do not come within the class enumerated in section l,of article 10, of the constitution,which reads: “The general assembly shall provide. by law for the election of such county and township officers as may be necessary,” and for that reason a majority of the court are of the opinion that the general assembly was not prohibited from passing this law, and that section 5 of the special act is not inimical to the constitution.
Considerable discussion is had as to the manner in which this power should be exercised, and while it is not necessary for us to pass upon that question, I desire to call the attention of persons who may be interested to the case of Thomas Brophy v. Fannie Landman, in 28 Ohio St., at page 542. It seems that at one time in the history of the government of the city of Toledo we had a statute that provided for a board of city improvements. The statute provided for the election of three commissioners, who should hold their office for a certain period; they were called the board of commissioners, and in connection with the city engineer and the mayor of the city, they constituted the board of improvements, and before any street could be improved, it was required that the ordinance for the improvement should be first passed upon by this board of improvements, and recommended by them. In short, no public improvement could be made, as was held by the Supreme Court, except as the board of improvements authorized the same. An application was made to improve Elm street, and it was improved. Mrs. Landman was the owner of property on that *394 street, and when she was assessed, objection was made to the whole assessment on the ground that the improvement was never passed upon by the board of improvements. It appeared by the records that it had been before the board, that there was but one commissioner present with the mayor and engineer; the mayor and city engineer voted for, and the commissioner against the improvement, and it was declared carried, and the street improved. The Supreme Court held with Mrs. Landman, that the improvement was illegal for that the board of improvements had not passed upon it.
Parker & Fries, for plaintiffs in error.
Cole & Chase, F. A. Baldwin and James O. Troup, for defendant in error.
You will find in the opinion that the court say: “We do not now decide that it is impossible for three of this board to transact its bsuiness, but whatever number is present at a meeting, in order to make a valid recommendation in • the matter of public improvement, it is necessary that there should be at least three votes in its favor. That is to say, the mayor and the city engineer might vote, but they must have one of the commissioners to vote as they do in order to make the necessary majority.”
We think that in the case at bar, that perhaps a majority of the board should have met, being seven; and that there should have been at least a vote of four in favor of any proposition of contract, and that before any contract should be let or signed by the board, it should be approved by a vote of at least four of that body, and because of the showing in this petition that this contract in this case has never been approved by a majority of the seven members of this board, we hold that the county commissioners have not the power or the authority to enter into this contract, and for that reason the"judgment of the court of common pleas will be affirmed.
Judge King dissents.